**DISTRICT COURT OF THE VIRGIN ISLANDS**
**DIVISION OF ST. CROIX**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | Criminal Action No. 2016-0009 |
| | ) | |
| SERGIO QUINONES-DAVILA, | ) | |
| | ) | |
| Defendant. | ) | |
| _____ | ) | |

Attorneys:
**Alphonso G. Andrews, Esq.,**
St. Croix, U.S.V.I.
        *For the Government*

**Kye Walker, Esq.,**
St. Croix, U.S.V.I.
        *For Defendant*

## MEMORANDUM OPINION

**Lewis, Chief Judge**

THIS MATTER comes before the Court on Defendant Sergio Quinones-Davila's "Motion for Revocation of Detention Order," pursuant to 18 U.S.C. § 3145(b) and the Due Process Clause of the Fifth Amendment. (Dkt. No. 1070). For the reasons discussed below, the Court will deny Defendant's Motion.

## I.    BACKGROUND

This case began with a Complaint filed on November 16, 2015 against four Defendants charging conspiracy to possess a controlled substance with intent to distribute, and possession of cocaine powder with intent to distribute. (Dkt. No. 1 in 2015-mj-0029). Defendant Sergio Quinones-Davila ("Defendant" or "Quinones-Davila") was not included as a Defendant in this Complaint. On December 8, 2015, a separate Complaint was filed against Quinones-Davila and five other Defendants (not named in the November 2015 Complaint), charging conspiracy to

possess a controlled substance with intent to distribute. (Dkt. No. 1 in 2015-mj-0031). Defendant was arrested in Florida on December 10, 2015, and has been detained since that time.[1]

On December 29, 2015, the Government filed an Information charging Defendant and nine co-Defendants with conspiracy, as well as possession of a controlled substance with intent to distribute. (Dkt. No. 43 in 2015-cr-0042). A detention hearing took place on January 27 and 28, 2016 before Magistrate Judge George W. Cannon, Jr. The Government relied on its previously filed Motion to Detain with an attached affidavit submitted by a special agent with the U.S. Drug Enforcement Administration ("DEA"). (Dkt. Nos. 1-1 and 14 in 2015-mj-0031). Quinones-Davila presented the testimony of his wife who offered to serve as a third-party custodian in Orlando, Florida and a friend who offered to serve as a third-party custodian on St. Croix. (Dkt. No. 1070 at 2 in 2016-cr-0009).

On January 29, 2016, Judge Cannon issued an Order of Detention. (Dkt. No. 121 in 2015-cr-0042). In that Order, Judge Cannon summarized the information presented in the DEA agent's affidavit. The agent recounted that, in July 2014, DEA had started to investigate a drug trafficking organization that was allegedly importing cocaine from Venezuela into the continental United States through Puerto Rico and the U.S. Virgin Islands. *Id*. at 1. The affidavit described Quinones-Davila as "one of the principals" in the drug trafficking organization, and described efforts by Defendants to secure loads of cocaine from Venezuelan vessels on the open seas south of St. Croix, as documented by a Confidential Source through recorded phone calls, recorded in-person conversations, and text messages. *Id.* at 2-4.

The Detention Order also summarized the testimony offered by Defendant's wife, Ms. Dinia Rodriguez, who stated she would undertake the responsibilities of a third-party custodian

---

[1] Quinones-Davila was initially arraigned in the Middle District of Florida on December 11, 2015, and was transferred to the District of the Virgin Islands pursuant to Fed. R. Crim. P. 5(c)(3). (Dkt. No. 22 in 15-mj-0031).

and ensure Defendant's appearance on St. Croix if Quinones-Davila was released and allowed to return to their home in Orlando, Florida. *Id.* at 4. According to the Detention Order, Johnny Rodriguez, Jr., a friend of Quinones-Davila who lives on St. Croix, testified that, if Quinones-Davila was released in Florida, he would allow Quinones-Davila to stay with him when Quinones-Davila was required to be on St. Croix, and that he would act as a third-party custodian when Defendant was on St. Croix. *Id.* at 5.

Magistrate Judge Cannon found that the evidence against Defendant was strong and that, "[g]iven the nature of the charges, said Defendant's level of participation in the alleged conspiracy, and the possible sentence said [D]efendant faces if convicted [a ten-year minimum], . . . Defendant [was] both a danger and a flight risk." *Id.* at 7. Judge Cannon concluded that "no conditions exist that would reasonably ensure the safety of the community and the appearance of said Defendant as required," and ordered him detained. *Id.*

On May 10, 2016, Quinones-Davila and eleven co-Defendants were charged by Indictment, *inter alia*, with Conspiracy to Possess a Controlled Substance with Intent to Distribute, in violation of 21 U.S.C. §§ 841(a)(1) and 846. (Dkt. No. 1 in 2016-cr-0009). Quinones-Davila and various other co-Defendants were also charged with Attempted Possession of Cocaine with Intent to Distribute and Possession of Cocaine with Intent to Distribute. *Id.*[2] A Superseding Indictment was filed on August 23, 2016, charging Quinones-Davila and fourteen co-Defendants with conspiracy to possess a controlled substance with intent to distribute (Count 1). (Dkt. No. 190). Quinones-Davila and various other co-Defendants were also charged with the related crimes of attempted possession (Counts 3 and 6) and possession of cocaine (Count 7). *Id.* In May 2016, the Government filed a motion to extend discovery deadlines by a month (Dkt. No. 81), and

---

[2] In addition, two Defendants were charged with Bulk Cash Smuggling, in violation of 31 U.S.C. § 5332(a)(1). (Dkt. No. 1).

Defendants filed numerous motions, including motions challenging detention (Dkt. Nos. 18, 23, 57, 64, 95, 131) and motions to suppress evidence (Dkt. Nos. 17, 180, 219, 220, 222, 347, 374). One Defendant was arraigned in mid-September 2016 (Dkt. No. 260), and filed a motion to continue the trial, which had been set for October 31, 2016. (Dkt. No. 296). The motion to continue was granted. (Dkt. No. 299). At calendar call in October 2016, due to numerous pending motions and in consultation with the parties, the Magistrate Judge set the trial date for April 2017. (Dkt. No. 377). In early April 2017, trial was continued for one week, from April 25 to May 2, 2017, at the Government's request. (Dkt. No. 636).[3] A final Defendant was arraigned on April 17, 2017. (Dkt. No. 682). That Defendant moved to sever his case, which the Court granted on April 24, 2017. (Dkt. No. 718).

The trial of six Defendants commenced on May 2, 2017 with jury selection, which lasted until May 4, 2017. All counsel agreed on a break from trial on Friday, May 5, 2017, as well as another break from trial the next week, May 8-12, 2017, to allow one of the defense counsel to attend a personal engagement. Trial was scheduled to resume on Monday, May 15, 2017 with opening statements. However, on that morning, the Government produced an extensive amount of discovery. The Government gave its opening statement on May 15th, but the Court delayed opening statements of the Defendants for a week in order to provide them with the opportunity to review and process the late discovery. Defense opening statements took place on Monday, May 22, 2017, and the trial concluded with a hung jury on July 7, 2017.

---

[3] The Magistrate Judge found that a continuance of the trial date may facilitate plea negotiations with the remaining Defendants and a continuance would allow the resolution of pending pretrial motions that may impact trial. (Dkt. No. 636). The Magistrate Judge also accepted the Government's representation that five of the Defendants had no objection to the continuance, and the one Defendant who objected did so on the ground that counsel was scheduled for trial in another matter, but the trial in that other case had been continued. *Id.*

Quinones-Davila filed the instant Motion on July 27, 2017 (Dkt. No. 1070); the Government filed a Response on August 3, 2017 (Dkt. No. 1090); and Quinones-Davila filed a Reply on August 14, 2017 (Dkt. No. 1098). On September 1, 2017, the Court issued an Amended Trial Management Order which scheduled the retrial of this matter for January 18, 2018. (Dkt. No. 1105).

As a result of the extensive damage and destruction caused by Hurricane Maria on September 19-20, 2017, the St. Croix Courthouse was closed. The Court issued two General Orders continuing, *inter alia*, all criminal matters on St. Croix until November 27, 2017, and excluding the time from September 5, 2017 through November 27, 2017 under the Speedy Trial Act, pursuant to 18 U.S.C. § 3161(h)(7)(A). (Misc. Case No. 17-0011, Dkt. Nos. 1, 3). On October 25, 2017, the Government filed a "Motion to Extend TMO Deadlines" wherein it requested a three-week extension of all deadlines for November and December 2017 contained in the Court's Amended Trial Management Order issued on September 1, 2017. (Dkt. No. 1112 in 2016-cr-0009). All defense counsel concurred in the request. *Id.*[4]

On November 2, 2017, Quinones-Davila filed a Motion to Continue Jury Selection and Trial Date. (Dkt. No. 1117). Quinones-Davila explained that he had a number of pending requests to the Court that had been delayed due to the hurricanes, including: a request to retain an expert who, if approved, would need two months to review discovery and trial testimony; a request for a trial transcript; and a request for payment of his interpreter. *Id.* Quinones-Davila asserted that he would also need time to review the transcript from the first trial and to prepare witness examinations and motions in limine prior to the second trial. As a result, the remaining two and one-half months before the January 18, 2018 retrial was "no longer realistic to retry this

_____

[4] The Government noted that it was unable to reach one of the defense counsel but, based on a prior in-person conversation with him, the Government did not anticipate that any counsel would object to the motion. (Dkt. No. 1112). No objection was, in fact, lodged.

complicated, multi-defendant matter." *Id.* at 2. He asked that a new date be determined at the next calendar call. *Id.* Quinones-Davila's Motion to Continue was granted. (Dkt. No. 1119). After meeting with counsel at calendar call on November 15, 2017, Magistrate Judge Cannon scheduled the retrial for April 16, 2018. (Dkt. No. 1131).

On November 20, 2017, Quinones-Davila filed a "Motion for Hearing on Motion to Revoke Detention Order [Doc. No. 1098]," observing, *inter alia*, that he has been in custody just shy of twenty-two months, and the trial was now scheduled for April 16, 2018, resulting in an additional five months of pretrial detention. (Dkt. No. 1135).

The Court has determined that the written record is a sufficient basis upon which to render its ruling and therefore a hearing is unnecessary. Based on that record, Defendant's Motion will be denied.

## II. DISCUSSION

### A. The Parties' Arguments

In the instant Motion, Defendant argues for revocation of his Detention Order "pursuant to 18 U.S.C. § 3145(b) and the Due Process Clause of the Fifth Amendment." (Dkt. No. 1070 at 1). The basis for Quinones-Davila's motion is the alleged violation of his due process rights that have resulted from his continued detention.[5]

---

[5] Title 18 of the U.S. Code, Section 3145(b), provides that if a person is ordered detained by a magistrate judge, that person may file a motion for revocation or amendment of the detention order. Quinones-Davila cites 18 U.S.C. § 3145(b) and mentions revocation of detention in passing as the statutory authority for his relief. He also notes that the district court exercises *de novo* review over a magistrate judge's detention order. However, the entirety of Defendant's argument focuses on how his continued detention violates his due process rights. He applies a due process standard, rather than arguing that, under a *de novo* review, the Magistrate Judge erred in his detention determination. *See United States v. Hofstetter*, 2017 WL 4079181, at *5 (E.D. Tenn. Sept. 14, 2017) (agreeing with defendant that "a due process violation provides a constitutional basis for the Court to reconsider its detention order that is separate from the question of whether a detention hearing may be reopened under the Bail Reform Act."). Defendant's due process approach is underscored by the fact that he did not provide a transcript of the detention hearing, as required by LRCi 72.2(a) governing review of a magistrate judge's order. The Court will therefore evaluate

Using a standard for due process challenges to continued detention culled from *United States v. Cos*, 2006 WL 4061168 (D.N.M. Nov. 15, 2006) and *United States v. Ailemen*, 165 F.R.D. 571 (N.D. Cal. 1996), Quinones-Davila argues that the nineteen-month detention from the point of his arrest to the filing of the instant Motion, plus the number of additional months that will pass before the retrial, weigh in favor of finding a due process violation warranting his release; the Government bears some responsibility for the length of the pretrial delay, which also weighs in Defendant's favor; and there is no evidence that Quinones-Davila is a danger to the community. (Dkt. No. 1070). As a result, Quinones-Davila contends that stringent conditions of release, such as home confinement, use of third-party custodians, and bail should strike an appropriate balance between Defendant's liberty interests and the Government's interests in protecting society and ensuring that he appears for trial. *Id.* at 5-9.

In its Response, the Government states that the Magistrate Judge properly ordered detention. (Dkt. No. 1090 at 7). Citing the due process standard related to continued detention, articulated by the Third Circuit in *United States v. Accetturo*, 783 F.2d 382, 388 (3d Cir. 1988), the Government asserts that: (1) the charges against Defendant are serious; (2) Defendant remains a flight risk, as he has only minimal family ties to the Virgin Islands and is associated with boat captains, which presents a risk he could relocate to foreign countries; (3) he faces a 24-30 year sentence, if convicted, which also creates a risk of flight; (4) the nature of the offenses is indicative of danger to the community, and release would facilitate any intention he might have to continue drug trafficking activities; (5) the Government's case is strong on the merits; (6) Quinones-

Quinones-Davila's arguments under the due process standard which, in any event, incorporates some of the elements a court assesses when considering a statutory motion for revocation of a detention order—such as the seriousness of the charges; whether the defendant presents a risk of flight or danger to the community; and the strength of the case against the defendant. *See United States v. Accetturo*, 783 F.2d 382, 388 (3d Cir. 1988).

Davila's detention is not unfairly long under the circumstances; (6) the case is complex; and (7) no strategic maneuvers by the Government added to the complexity of the case or delay. *Id.* at 8-14.

In his Reply, Quinones-Davila argues that the Government "continues to rely on the rebuttable presumption that no condition or combination of conditions of release will reasonably assure the safety of the Virgin Islands community or Quinones-Davila's appearance at trial without offering any actual or additional evidence" to support his continued detention. (Dkt. No. 1098 at 1).

### B. Due Process Detention Standard

The Due Process Clause of the Fifth Amendment of the United States Constitution provides that "[n]o person shall . . . be deprived of life, liberty, or property, without due process of law." U.S. Const. amend V. Congress has made the Fifth Amendment applicable to the Virgin Islands pursuant to section 3 of the Revised Organic Act of 1954, 48 U.S.C. § 1561.

The Supreme Court has concluded that the Government may detain a defendant prior to trial consistent with the Due Process Clause as long as that confinement does not amount to "punishment of the detainee." *Bell v. Wolfish*, 441 U.S. 520, 535 (1979). In *United States v. Salerno*, 481 U.S. 739 (1987), the Supreme Court explored due process concerns related to pretrial detention. The Court noted that it had "repeatedly held that the Government's regulatory interest in community safety can, in appropriate circumstances, outweigh an individual's liberty interest," *id.* at 748, which "may, in circumstances where the government's interest is sufficiently weighty, be subordinated to the greater needs of society." *Id.* at 750-51. The Court observed that "the mere fact that a person is detained does not inexorably lead to the conclusion that the government has imposed punishment," *Id.* at 746, and further referenced Congress' finding that persons arrested for extremely serious offenses "are far more likely to be responsible for dangerous acts in the

community after arrest." *Id.* at 750. The Court in *Salerno*, however, "intimate[d] no view as to the point at which detention in a particular case might become excessively prolonged, and therefore punitive, in relation to Congress' regulatory goal [set forth in the Bail Reform Act]." *Id.* at 747 n.4.

In *Accetturo*, the Third Circuit generally described factors a court should consider when assessing whether a defendant's due process rights require the defendant to be released from pretrial detention. The Court opined:

> Thus, a determination under the Bail Reform Act that detention is necessary is without prejudice to a defendant petitioning for release at a subsequent time on due process grounds. Because due process is a flexible concept, arbitrary lines should not be drawn regarding precisely when defendants adjudged to be flight risks or dangers to the community should be released pending trial. Instead, we believe that due process judgments should be made on the facts of individual cases, and should reflect the factors relevant in the initial detention decision, such as [1] the seriousness of the charges, [2] the strength of the government's proof that defendant poses a risk of flight or a danger to the community, and [3] the strength of the government's case on the merits. Moreover, these judgments should reflect such additional factors as [4] the length of the detention that has in fact occurred, [5] the complexity of the case, and [6] whether the strategy of one side or the other has added needlessly to that complexity.

*Accetturo,* 783 F.2d at 388.

As noted above, in its Response to Quinones-Davila's Motion, the Government applied the *Accetturo* factors in arguing that Defendant's due process rights are not violated by his continued detention. Quinones-Davila, on the other hand, applied the factors enunciated in *Cos* (Dkt. No. 1070 at 5)[6] and those enunciated in *Ailemen. Id.* at 8.[7] While these three sets of factors overlap to

---

[6] The factors set forth in *Cos* are: "(i) the length of confinement and any non-speculative expected confinement; (ii) the government's responsibility for delays in the proceedings; and (iii) the strength of evidence supporting detention." *Cos*, 2006 WL 4061168, at *3 (citing *United States v. Millan*, 4 F.3d 1038, 1043 (2d Cir. 1993)).

[7] The factors set forth in *Ailemen* are: "(1) protecting the integrity of the trial process (by, for example, preventing a defendant from attempting to intimidate witnesses, jurors, or others involved in the prosecution), (2) preventing danger to the community, and (3) assuring that the

some extent, the Court will apply the governing law in the Third Circuit, as articulated in *Accetturo*.

## C. Analysis

### 1. Seriousness of the Charges

Quinones-Davila is charged in the Superseding Indictment with Conspiracy to Possess a Controlled Substance with Intent to Distribute, in violation of 21 U.S.C. §§ 841(a)(1), 841(b)(1)(A)(ii), and 846; Attempted Possession of Cocaine with Intent to Distribute, in violation of 21 U.S.C. §§ 841(a)(1), 841(b)(1)(A)(ii), and 846; and Possession of Cocaine with Intent to Distribute, in violation of 21 U.S.C. § 841(a)(1) and 841(b)(1)(A)(ii). (Dkt. No. 190). Each of these charges carries a statutory ten-year minimum sentence, with a maximum term of life imprisonment. Moreover, the Government charges that the alleged drug trafficking organization of which Quinones-Davila allegedly was a leader, was involved in the importation or attempted importation of at least 273 kilograms of cocaine from August 2014 through November 2015. The Court finds that these charges are serious and, consequently, this *Accetturo* factor weighs against this Court finding a due process violation in Quinones-Davila's continued detention. *See United States v. Berry*, 2009 WL 3254449, at *6 (D.V.I. Oct. 9, 2009) (finding that conspiracy to possess crack cocaine and cocaine powder with intent to distribute, and possession of crack cocaine and cocaine powder with intent to distribute, constituted "serious charges" under *Accetturo*).

### 2. Strength of Government's Proof Concerning Risk of Flight and Danger to the Community

The *Accetturo* factor—the strength of the Government's proof concerning risk of flight and danger to the community—echoes the factors the Magistrate Judge considered pursuant to 18 U.S.C. § 3142(g) when ordering Quinones-Davila detained in the first instance. In justifying

---

defendant is present for trial and, if convicted, for sentencing (the risk of flight factor)." *Ailemen,* 165 F.R.D. at 595-96.

detention, Magistrate Judge Cannon found that no condition or combination of conditions would reasonably assure Quinones-Davila's appearance and the safety of the community, given the strength of the evidence, the nature of the charges, the level of participation in the alleged conspiracy, and the possible sentence he faced if convicted. (Dkt. No. 121 in 2015-cr-0042). In so finding, the Magistrate Judge noted that Quinones-Davila "has no residence or close family in or other ties to St. Croix." *Id.* at 6. He also noted that Quinones-Davila had been charged with conspiracy to possess cocaine with intent to distribute—"an offense for which a maximum term of imprisonment of ten years or more is prescribed in the Controlled Substances Act (21 U.S.C. § 801 *et seq.*)[,]" pursuant to 18 U.S.C. § 3142(f)(1)(C). *Id.*

Although not explicitly stated in the Detention Order, the drug conspiracy charge would trigger the rebuttable presumption that no condition or combination of conditions would reasonably assure Quinones-Davila's appearance and the safety of the community under 18 U.S.C. § 3142(e)(3)(A). *See, e.g., United States v. Williams*, 903 F. Supp. 2d 292, 294 (M.D. Pa. 2012). Once that presumption arises, "the burden shifts to [the defendant] to produce some credible evidence that he will appear and will not present a threat to the community." *United States v. Oliver*, 2016 WL 1746853, at *5 (W.D. Pa. May 3, 2016) (citing *United States v. Carbone*, 793 F.2d 559, 560 (3d Cir. 1986)). Quinones-Davila did not rebut the presumption at the hearing before the Magistrate Judge, nor does he do so now.

At this juncture, the Court has the benefit of evaluating the parties' current arguments against the backdrop of an extensive trial record. In the instant Motion, Quinones-Davila analyzes the analogous factor articulated in *Ailemen*, 165 F.R.D. at 595-96 (*see supra,* n.6). He argues that

> there is no evidence Quinones-Davila threatened witnesses, jurors or even has any propensity to violence. In fact, Quinones-Davila's family has stood by him throughout this case with his wife attending every day of the nine (9) week trial. Stringent conditions of release, such as home confinement, third-party custodians, and bail guaranteed by people close to Quinones-Davila should strike an

appropriate balance between Quinones-Davila's liberty interests and the Government's regulatory interests.

(Dkt. No. 1070 at 8). This was the extent of Defendant's argument concerning both dangerousness to the community and risk of flight. *Id.*

The fact that Quinones-Davila's wife stood by him during trial does not shed any light on his possible dangerousness to the community, and Quinones-Davila provides no authority as to why this fact should be relevant in the Court's assessment in the context of a possible due process challenge to his continued detention. In addition, the fact that there is no evidence that Quinones-Davila threatened witnesses or jurors, or had a "propensity to violence" is not, by itself, dispositive of the danger to the community inquiry. In *United States v. Strong,* 775 F.2d 504 (3d Cir. 1985), the Third Circuit found that the statutory language and legislative history of § 3142(b) "unequivocally establishe[d] that Congress intended to equate traffic in drugs with a danger to the community." *Id.* at 506; *see id.* at 507 (opining that the statute made an "explicit equation of a drug offense with danger to the safety of the community for purposes of release or detention of a defendant pending trial[.]"); *United States v. Perry,* 788 F.2d 100, 109, 113 (3d Cir. 1986) (considering pretrial detention imposed for the "safety of the community" to be essentially civil commitment, and holding that substantive due process is not violated by detaining "persons found to be dangerous in a very real sense" including "distributors of dangerous drugs"); *United States v. Morales*, 2011 WL 3651355, at *3 (E.D. Tex. Aug. 19, 2011) ("The very nature of drug offenses constitutes a danger to the community which may justify pretrial detention"); *Ailemen*, 165 F.R.D. at 596 ("We begin with a clear recognition that trafficking in illegal narcotics [including cocaine] . . . without more, causes serious harm to society. A drug trafficker is, by legal definition, a danger to the community.").

In this regard, courts are attentive to the possibility of whether a defendant might continue drug trafficking activities if released to the community. *See United States v. Gibson,* 481 F. Supp.

2d 419, 423 (W.D. Pa. 2007) (when determining whether to detain defendant "the court must, in essence, make a prediction as to whether defendant is likely to traffic in illicit drugs if released pending trial") (citing *Perry*, 788 F.2d at 114-15 ("the dangerousness determination involves a prediction of the detainee's likely future behavior.")). The Government points out that Quinones-Davila has shown that he has a propensity to continue drug trafficking because, although some of his co-Defendants had already been arrested on November 13, 2015—which presumably would have signaled that the activities of the alleged drug trafficking organization were known to law enforcement—Defendant nevertheless allegedly continued to engage in drug trafficking, as confirmed by his statement to law enforcement agents when he was arrested in December 2015. At that time, Quinones-Davila allegedly admitted that he was in the process of arranging another cocaine deal. Such brazen conduct, notwithstanding Defendant's knowledge of law enforcement activity focused on a drug trafficking organization of which Defendant allegedly was a part, suggests that Quinones-Davila may have a predilection to engage in drug trafficking if released from detention.

In sum, for purposes of assessing the danger to the community factor, Quinones-Davila's argument that he has no propensity for violence and that his family has stood by him through trial does not overcome the danger that drug trafficking is to the community and the likelihood that Quinones-Davila will engage in such activities if released.[8]

---

[8] In his Reply, Quinones-Davila contends that "the Government continues to rely on the rebuttable presumption that no condition or combination of conditions of release will reasonably assure the safety of the Virgin Islands community or Quinones-Davila's appearance at trial without offering any actual or additional evidence to support the continued detention of Quinones-Davila." (Dkt. No. 1098 at 1). This presumption has remained extant since the detention hearing because Quinones-Davila did not rebut it then, nor has he provided any argument or evidence through his current Motion—even with the benefit of material from an eight-week trial—to rebut it now or tip this *Accetturo* factor in his favor. By contrast, and contrary to Defendant's contention, the Government has pointed to evidence that Quinones-Davila allegedly admitted to continuing drug trafficking activities even after some of his co-Defendants were arrested.

With regard to the risk of flight prong, the Government observes that Quinones-Davila is associated with boat captains and thus "a risk exists that he can utilize their services to relocate to foreign countries if released in the Virgin Islands or Florida." (Dkt. No. 1090 at 9). The Court finds this to be a compelling consideration when assessing the *Accetturo* risk of flight factor and the evidence presented at trial, as these alleged contacts provide a relatively easy and hard to detect means to flee—not only from the Virgin Islands (to which Quinones-Davila has minimal ties) but from the continental United States as well.

Further, Defendant poses a risk of flight because of the serious nature of the offenses with which he is charged and the severity of the penalties he faces if convicted: a guideline sentence of twenty-four to thirty years. *See United States v. Wrensford*, 2012 WL 6028628, at *7 (.V.I. Dec. 4, 2012) (finding risk of flight due to serious nature of offenses charged and severity of penalties if convicted); *United States v. Thomas*, 2009 WL 2996532, at *3 (D.V.I. Sept. 16, 2009) ("Although [the] [d]efendants have ties to the jurisdiction and have offered third-party custodians, the Court takes into consideration the fact that [the] [d]efendants face a significant period of incarceration if convicted. Community ties and third party custody is not sufficient to assure [the] [d]efendants' appearance for trial. . . .") (citing cases); *United States v. Stein*, 2005 WL 3071272, at *7 (S.D.N.Y. Nov. 15, 2005) ("[T]he defendant has a substantial motive to flee given the severity of the sentence he may face in the event of conviction."); *United States v. Caraballo*, 47 F. Supp. 2d 190, 192 (D.P.R. 1999) (noting that "defendant is a 'risk of flight' because defendant potentially faces a life sentence and the risk of flight increases as the severity of [the] potential sentence increases").

These considerations, together with the evidence presented at trial as to Quinones-Davila's alleged behind-the-scenes orchestration of events in the Virgin Islands from his location in Florida,

convince the Court that Quinones-Davila's proffered home confinement, third-party custodians and bail are insufficient to reasonably assure his appearance at trial.

In view of the foregoing, the Court finds that the danger to the community and risk of flight *Accetturo* factors weigh against the Court finding a due process violation in Quinones-Davila's continued detention.

### 3. Strength of the Government's Case on the Merits

Based on the evidence presented at trial, the Court finds that the strength of the Government's case on the merits weighs against a due process violation. The confidential source, Timothy Schoenbohm, testified, *inter alia*, that co-Defendant, Jose Hodge, arranged to use Schoenbohm's boat for a mid-sea retrieval of thirty-five kilograms of cocaine in August 2014, which Hodge stated was for Quinones-Davila. Hodge and Schoenbohm brought the cocaine to Shoenbohm's apartment where Hodge told Schoenbohm to take a photo of the drugs and send it to Quinones-Davila. Hodge also referred to Quinones-Davila as "the boss." A week after retrieving the shipment, Quinones-Davila met Schoenbohm on St. Croix and told him "great job" in reference to the thirty-five kilogram mid-sea retrieval. Schoenbohm further testified that in October 2014, after discussing another cocaine retrieval with Hodge, Quinones-Davila sent Schoenbohm the mid-sea coordinates for retrieval of seventy-one kilograms of cocaine. The cocaine was brought to Hodge's house and, at Quinones-Davila's instructions, another co-Defendant picked up the drugs and flew them to Puerto Rico. Schoenbohm also testified that, in November 2014, he spoke with Quinones-Davila following an unsuccessful attempt with Hodge to retrieve eighty kilograms of cocaine at sea, and Quinones-Davila explained that the boat bringing the cocaine had broken down. In addition, Schoenbohm testified that, in November 2015, Quinones-Davila contacted him to determine how much money he needed for fuel for his boat, and told Schoenbohm not to go anywhere and to be ready. Schoenbohm then received money for gas via Western Union and met

a crew of co-Defendants who had traveled to St. Croix to effect another mid-sea drug retrieval for Quinones-Davila. In addition to Schoenbaum's testimony, the Government introduced audio recordings of conversations allegedly between Schoenbaum and Quinones-Davila regarding various details of the drug transactions. Finally, Quinones-Davila also allegedly discussed his involvement in drug trafficking with the DEA agent who arrested him, according to the agent who testified.

In view of the foregoing, the Court concludes that the Government presented substantial evidence of Quinones-Davila as a key organizer of cocaine retrievals or attempted retrievals in August 2014, October 2014, November 2014 and November 2015. Accordingly, the strength of the Government's case factor weighs in favor of continued detention.

### 4. The Length of Detention

Quinones-Davila has been incarcerated since December 10, 2015. He was detained for almost seventeen months prior to his first trial, which began on May 2, 2017, and will have been detained for twenty-eight months by the time the retrial begins in April 2018.

In *United States v. Orena*, 986 F.2d 628 (2d Cir. 1993), the Second Circuit observed that "the length of a detention period will rarely by itself offend due process." *Id*. at 631; *see also Millan*, 4 F.3d at 1044 ("A prospective detention period of the length at issue here [twenty-four months] while weighing in favor of release, does not, standing alone, establish that pretrial confinement has exceeded constitutional limits."). After consideration of the relevant factors under the circumstances presented, courts have found pretrial detention periods as long as forty-one months, *United States v. Casas*, 425 F.3d 23, 34 (1st Cir. 2005), thirty to thirty-three months, *United States v. El-Hage,* 213 F.3d 74, 79 (2d Cir. 2000), and thirty-two months, *United States v. Melendez-Carrion,* 820 F.2d 56, 60-61 (2d Cir. 1987), to be constitutional.

While the Court considers Quinones-Davila's twenty-eight month detention period until the start of the retrial as weighing in favor of release, the Court does not find that the length of that detention, by itself, offends due process. This is particularly so when this factor is considered in conjunction with the next two *Accetturo* factors—the complexity of the case and whether one side added needlessly to that complexity—both of which shed some light on the reasons for the delay.

### 5. Complexity of the Case

On December 8, 2015, Quinones-Davila and four other co-Defendants were charged in a one-count Complaint with conspiracy to possess a controlled substance with intent to distribute. (Dkt. No. 1 in 2015-mj-0031). The case grew in terms of number of Defendants and charges. On December 29, 2015, the Government filed an Information, charging Quinones-Davila and nine co-Defendants with conspiracy and possession with intent to distribute cocaine. (Dkt. No. 43 in 2015-cr-0042). In the seven-count Indictment alleging nine separate overt acts, filed on May 10, 2016, the Government charged Quinones-Davila and eleven co-Defendants with conspiracy, and further charged Defendant and/or various of the other eleven co-Defendants with possession and attempted possession with intent to distribute cocaine. (Dkt. No. 1 in 2016-cr-0009).[9] Finally, in the seven-count Superseding Indictment, filed in August 2016, the Government charged Quinones-Davila and/or various of the other fourteen co-Defendants with the same charges and overt acts. (Dkt. No. 190).

During the course of the case, Defendants filed numerous pretrial motions, including motions challenging detention (Dkt. Nos. 23, 57, 64, 95); motions to suppress (Dkt. Nos. 17, 180, 219, 220, 222, 347, 374); motions to compel (Dkt. Nos. 31, 32, 218, 221, 779); motions to reconsider detention (Dkt. Nos. 18, 23); motions to release Defendants from detention or stay detention hearings (Dkt. Nos. 57, 64, 96); motions to sever (Dkt. Nos. 459, 711); a motion to

---

[9] As indicated above, two Defendants were also charged with bulk cash smuggling. (Dkt. No. 1).

change venue (Dkt. No. 236); and a motion to dismiss (Dkt. No. 240). These motions necessitated evidentiary and other hearings and required the issuance of a number of Memorandum Opinions (*see, e.g.*, Dkt. Nos. 104, 107 in 2015-cr-0042; Dkt. Nos. 259, 434, 507, 880, 883 in 2016-cr-0009), Orders, and oral rulings before trial could proceed. Also during the course of the case, some Defendants were taking pleas and being sentenced even as one Defendant (who went to trial) was arraigned as late as mid-September 2016 (Dkt. No. 261) and another, who moved to sever, was arraigned on April 17, 2017. (Dkt. No. 711).[10] Six Defendants proceeded to trial in May 2017. The Government produced approximately 40 audio recordings and over 1,000 pages of discovery.

All of these facts have contributed to the complexity of this case. *See Berry*, 2009 WL 3254449, at *8 (considering multi-defendant case with voluminous discovery as inherently complex); *cf. United States v. Bryant*, 2006 WL 482430, at *1 (W.D. Va. Feb. 27, 2006) (noting "unusual complexity of the case" involving twenty co-defendants). Quinones-Davila himself characterized this case as a "complicated, multi-defendant matter" in his Motion to Continue the January 18, 2018 trial date. (Dkt. No. 1117 at 2). Given this backdrop, the Court finds that this *Accetturo* factor weighs against a due process violation.

### 6. Whether One Side Added Needlessly to the Complexity

The final *Accetturo* factor is "whether the strategy of one side or the other added needlessly to the complexity of the case." *Accetturo*, 783 F.2d at 388. Case law in the Third Circuit follows *Accetturo,* in assessing the actions of both parties to determine if either party bears responsibility for "needless[ ]" delay in going to trial. *See United States v. Harris,* 2011 WL 1660573, at *6 (W.D. Pa. May 3, 2011), *Berry*, 2009 WL 3254449, at *8-9.[11]

---

[10] In addition, one Defendant remains at large. (Dkt. No. 1140).

[11] Some cases outside this Circuit focus on whether the delay of the trial is attributable to the Government. *See, e.g., Millan*, 4 F.3d at 1043 and *United States v. Gonzalez-Claudio*, 806 F.2d 334, 341 (2d Cir. 1986). Quinones-Davila posits that "[s]o long as the Government has some

18

Quinones-Davila argues that there have been "several delays throughout the course of this matter, many of which are attributable to the Government." (Dkt. No. 1070 at 3). Quinones-Davila points to the Government not providing its first round of discovery until January 27, 2016, although it was due on January 21, 2016, and continuing to provide voluminous supplemental discovery up to and including trial, which caused the trial to be pushed back to a later date and caused a week-long break after trial began.

It is true that the Government was responsible for a six-day delay in proffering the first round of discovery (due January 21, 2016 and served January 27, 2016) and that it moved in May 2016 to extend the discovery deadline for a month (Dkt. No. 81). The Government's chronic delay in producing discovery was also responsible for a one-week delay in beginning trial testimony. Although the Court does not sanction any of the delays occasioned by the Government, the Court cannot conclude that the particular instances cited by Quinones-Davila tip this *Accetturo* factor in favor of finding a due process violation.

As the Court outlined above in describing the complexity of the case, most of the time that elapsed prior to the first trial was devoted to the resolution of numerous motions during the course of the litigation. In addition, the case began with four Defendants and two counts, and expanded to fifteen Defendants and seven counts, where Defendants were at different stages of progress in their cases. For example, at the time that Defendant Hodge filed a Motion to Suppress in August 2016 (Dkt. No. 180), the arrest warrants for Defendants Felix Melendez-Colon and Omy

---

responsibility for a portion of the delay" resulting from his pretrial detention, this factor weighs in his favor. (Dkt. No. 1070 at 7). However, the case law he cites for this proposition, *Gonzalez-Claudio*, provides that the Government must bear "*significant* responsibility for the duration of [pretrial] detention," 806 F.2d at 341, and that "[i]t suffices for present purposes to conclude that the Government, even if not deserving of blame, bears a responsibility for a portion of the delay *significant enough* to add considerable weight to the defendants' claim that the duration of detention has exceeded constitutional limits." *Id.* at 342-43 (emphasis added). *Accetturo* does not frame this element in the same way. Once again, the Court will follow the precedent established in *Accetturo* in examining this factor.

Gutierrez-Calderon (Dkt. Nos. 191, 192) had not yet been issued. Gutierrez-Calderon was arraigned in September 2016 and Melendez-Colon was arraigned in April 2017. Due to the September 2016 entry into the case of Gutierrez-Calderon, his counsel moved to continue the October 2016 trial (Dkt. No. 296), which was then rescheduled from October 31, 2016 to April 2017. (Dkt. Nos. 299, 377). Following the mistrial, Quinones-Davila's counsel filed the last motion to continue the trial of this "complicated multi-defendant matter" (Dkt. No. 1117 at 2) from its previously-scheduled January 2018 date (Dkt. No. 1118), and the trial was moved three months to April 2018. The anticipated length of the trial—which the parties estimate to last from six weeks (Dkt. No. 1113) to eight to ten weeks (Dkt. No. 1120)—also creates challenges in attempting to schedule it on the Court's calendar.

Quinones-Davila's faults the Government for filing "a new and separate indictment" in May 2016, less than a month before trial had been scheduled to begin, thereby creating a new case and allegedly causing cancellation of the June 2016 trial. (Dkt. No. 1070 at 3). Similar to the conclusion reached by the District Court in *United States v. Bryant*, this Court "can make no finding that the Government's 'responsibility' for the time between indictments evinces a punitive intent, because there is no evidence of record that the Government could or should have delayed filing the initial indictment or obtained the superseding indictment sooner." *United States v. Bryant*, 2006 WL 482430, at *5 (W.D. Va. Feb. 27, 2006). Moreover, the record does not show that the May 2016 filing of the Indictment "caus[ed] cancellation of the jury trial scheduled for June 6, 2016," as asserted by Quinones-Davila, since between May and June, 2016, counsel for the new Defendants was being appointed, and Defendants were, *inter alia*, seeking discovery, engaged in detention hearings, and seeking reconsideration of detention orders.

Finally, the mistrial was "wholly beyond the control of the parties or the Court." *See Bryant*, 2006 WL 482430, at *5. Then, Quinones-Davila himself filed a motion to continue the

retrial from its January 2018 date, stating that he needed additional time to file pretrial motions. (Dkt. No. 1117). Thus, the time from January 2018 to the rescheduled April 2018 trial date is his responsibility.

In sum, this *Accetturo* factor also weighs against the Court finding that Quinones-Davila's continued detention violates due process.

**D. Hearing**

In view of the briefing provided by the parties and the abundance of record evidence, the Court finds that a hearing is not necessary to resolve the Motion for Revocation of the Detention Order. Accordingly, Quinones-Davila's request for a hearing will be denied.

### III. CONCLUSION

For the foregoing reasons, the Court finds that the *Accetturo* factors weigh in favor of finding that Quinones-Davila's continued detention does not violate his due process rights. Accordingly, the Court will deny Quinones-Davila's Motion for Revocation of the Detention Order. (Dkt. No. 1070). The Court also finds that a hearing is not necessary to resolve the Motion and therefore Quinones-Davila's request for a hearing (Dkt. No. 1135) will be denied.

An appropriate Order accompanies this Memorandum Opinion.

Date: February 10, 2018

_____/s/_____
WILMA A. LEWIS
Chief Judge