| | |
|---|---|
| **UNITED STATES OF AMERICA**    ) | |
| ) | |
| v.    ) | **Criminal Action No. 2016-0009** |
| ) | |
| **SERGIO QUINONES-DAVILA, et al.**    ) | |
| ) | |
| **Defendants.**    ) | |
| _____ ) | |

Attorneys:
**Alphonso G. Andrews, Jr., Esq.,**
St. Croix, U.S.V.I.
**Everard E. Potter, Esq.,**
St. Thomas, U.S.V.I.
    *For the United States*

**Kye Walker, Esq.,**
St. Croix, U.S.V.I.
    *For Defendant Sergio Quinones-Davila*

## <u>MEMORANDUM OPINION</u>

**Lewis, Chief Judge**

THIS MATTER comes before the Court on Defendant Sergio Quinones-Davila's ("Defendant" or "Defendant Quinones-Davila") Motion for Judgment of Acquittal or, in the Alternative, Motion for New Trial ("Motion") (Dkt. No. 1612) and the Government's Response to Defendant's Motion (Dkt. No. 1662). For the reasons that follow, the Court will deny Defendant's Motion.[1]

---

[1] At the outset of the sentencing hearing for Defendant Quinones-Davila on November 14, 2018, the Court announced its ruling that Defendant's Motion was denied and that the Court's opinion would follow. This Memorandum Opinion contains the Court's rationale for its ruling.

# I.    BACKGROUND

Defendant Quinones-Davila was charged in Counts 1, 2, 5, and 6 of a Second Superseding Indictment ("Indictment") filed on February 21, 2018 with conspiracy to possess a controlled substance with intent to distribute in violation of 18 U.S.C. §§ 841(a), 841(b)(1)(A)(ii), and 846, and attempted possession, and possession, of a controlled substance with intent to distribute in violation of 18 U.S.C. §§ 841(a), 841(b)(1)(A)(ii), and 18 U.S.C. § 2. (Dkt. No. 1216).[2]

Count 1 of the Indictment alleged that "[f]rom on or about January 2014 until on or about March 2016," Defendant Quinones-Davila and others "did conspire and agree with one another . . . to knowingly and intentionally possess, with intent to distribute, more than five kilograms of a mixture and substance containing a detectible amount of cocaine hydrochloride (cocaine powder) . . . and a detectible amount of marijuana . . . ." *Id.* at 3. The Indictment further alleged that during the conspiracy, some of the Defendants traveled by boat south of St. Croix to retrieve cocaine at mid-sea, and the cocaine was then brought back to St. Croix and transshipped to Puerto Rico. *Id.* at 4. Some of the alleged attempts were successful and other were unsuccessful. Counts 2 and 5 of the Indictment alleged that Defendant Quinones-Davila and others participated in unsuccessful attempts to retrieve cocaine at mid-sea between November 10 and 12, 2014 and November 9 through 12, 2015, respectively. *Id.* at 9, 12. Count 6 of the Indictment alleged that Defendant Quinones-Davila and others participated in the successful retrieval of cocaine at mid-sea on November 13 and 14, 2015. *Id.* at 13.

Following trial, the jury returned guilty verdicts against Defendant Quinones-Davila on all four counts on June 26, 2018. (Dkt. No. 1572). Defendant then filed the instant Motion. In his

---

[2] A first trial in this matter resulted in a mistrial in July 2017. After the filing of the Second Superseding Indictment, a second trial began on April 30, 2018.

Motion, Defendant Quinones-Davila contends that the Government's evidence at trial was insufficient to establish his guilt beyond a reasonable doubt on Counts 1 and 6 of the Indictment, such that the Court should grant judgment of acquittal on those counts pursuant to Federal Rule of Criminal Procedure 29. (Dkt. No. 1612 at 2). Alternatively, Defendant argues that the cumulative effect of various alleged defects and errors at the second trial violated his due process rights, such that the Court should grant his request for a new trial pursuant to Federal Rule of Criminal Procedure 33. (Dkt. No. 1612 at 23).

## II. APPLICABLE LEGAL PRINCIPLES

### A. Federal Rule of Criminal Procedure 29

Rule 29 of the Federal Rules of Criminal Procedure provides that "the Court on the defendant's motion must enter a judgment of acquittal of any offense for which the evidence is insufficient to sustain a conviction." FED. R. CRIM. P. 29(a). Pursuant to Rule 29(c), a "defendant may move for a judgment of acquittal, or renew such a motion, within 14 days after a guilty verdict or after the court discharges the jury, whichever is later." FED. R. CRIM. P. 29(c)(1). In analyzing a Rule 29 motion, a court must determine "whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *United States v. McIntyre*, 612 F. App'x 77, 78 (3d Cir. 2015) (quoting *United States v. Caraballo-Rodriguez*, 726 F.3d 418, 424-25 (3d Cir. 2013)) (quotation marks omitted) (emphasis in original); *see also United States v. Smith*, 294 F.3d 473, 476 (3d Cir. 2002) ("In reviewing a Fed. R. Crim. P. 29 post-verdict motion for judgment of acquittal, a district court must 'review the record in the light most favorable to the prosecution to determine whether any rational trier of fact could have found proof of guilt beyond a reasonable

doubt based on the available evidence.'") (quoting *United States v. Wolfe*, 245 F.3d 257, 262 (3d Cir. 2001)).

A defendant "challenging the sufficiency of the evidence bears a heavy burden," *United States v. Donna*, 366 F. App'x 441, 450 (3d Cir. 2010), and an insufficiency finding should be "confined to cases where the prosecution's failure is clear," *United States v. Brodie*, 403 F.3d 123, 133 (3d Cir. 2005) (quoting *Smith*, 294 F.3d at 477). It is well-established that, on a Rule 29 motion, evidence should not be viewed in a vacuum but in relation to the totality of the evidence elicited in a case. *See United States v. Pavulak*, 700 F.3d 651, 668 (3d Cir. 2012) (noting that, in reviewing a sufficiency of evidence claim, courts "examine the totality of the evidence, both direct and circumstantial") (quotations omitted). Thus, "[t]he question is whether all the pieces of evidence against the defendant, taken together, make a strong enough case to let a jury find him guilty beyond a reasonable doubt." *Caraballo-Rodriguez*, 726 F.3d at 432 (quoting *United States v. Cooper*, 567 F.2d 252, 254 (3d Cir. 1977)) (internal quotation and quotation marks omitted). It is "immaterial" that the evidence may permit a "less sinister conclusion" than one of guilt. *Smith*, 294 F.3d at 478 (quoting *United States v. Dent*, 149 F.3d 180, 188 (3d Cir. 1998)). In other words, "the evidence does not need to be inconsistent with every conclusion save that of guilt." *Id.* (quoting *Dent*, 149 F.3d at 188).

With regard to Count 1 of the Indictment—conspiracy to possess with intent to distribute more than five kilograms of cocaine—the Third Circuit Model Jury Instructions provide that the Government must prove the following three elements: (1) that two or more persons agreed to possess with the intent to distribute a controlled substance; (2) that Defendant Quinones-Davila was a party to or member of that agreement; and (3) that Defendant Quinones-Davila joined the agreement or conspiracy knowing of its objectives to possess with the intent to distribute a

controlled substance and intending to join together with at least one other alleged conspirator to achieve that objective; that is, that Defendant Quinones-Davila and at least one other alleged conspirator shared a unity of purpose, and the intent to achieve that objective. MOD. CRIM. JURY INSTR. 3RD CIR. 6.21.846B.

While the Government must establish each element beyond a reasonable doubt, "[i]t may do so with direct or circumstantial evidence." *Caraballo-Rodriguez*, 726 F.3d at 425 (quotation omitted). "Indeed, the very nature of the crime of conspiracy is such that it often may be established only by indirect and circumstantial evidence." *Brodie*, 403 F.3d at 134 (citations omitted). The Third Circuit has noted that "[t]he existence of a conspiracy can be inferred from evidence of related facts and circumstances from which it appears as a reasonable and logical inference, that the activities of the participants could not have been carried on except as the result of a preconceived scheme or common understanding." *United States v. Mark*, 533 F. App'x 83, 85 (3d Cir. 2013) (quoting *Brodie*, 403 F.3d at 134) (internal quotations and ellipses omitted). Nonetheless, "[c]ircumstantial inferences drawn from the evidence must bear a 'logical or convincing connection to established fact.'" *Caraballo-Rodriguez*, 726 F.3d at 425 (quoting *United States v. Cartwright*, 359 F.3d 281, 291 (3d Cir. 2004)).

To prove Count 6 of the Indictment, the Government is required to show that: (1) Defendant Quinones-Davila possessed a mixture or substance containing a controlled substance; (2) Defendant Quinones-Davila possessed the controlled substance knowingly or intentionally; (3) Defendant Quinones-Davila intended to distribute the controlled substance; and (4) the controlled substance was cocaine hydrochloride (cocaine powder). MOD. CRIM. JURY INSTR. 3RD CIR. 6.21.841A.

Defendant Quinones-Davila was charged under an aiding and abetting theory in Count 6 of the Indictment. Accordingly, his guilt on that count can be established through proof that: (1) someone committed each of the essential elements of the charged offense; (2) Defendant Quinones-Davila knew that the charged offense was going to be committed; (3) Defendant Quinones-Davila knowingly did some act for the purpose of aiding, assisting, facilitating or encouraging the commission of the charged offense and with the intent that the charged offense be committed; and (4) Defendant Quinones-Davila's act or acts did, in some way, aid, assist, facilitate or encourage the commission of the crime. MOD. CRIM. JURY INSTR. 3RD CIR. 7.02.

### B.     Federal Rule of Criminal Procedure 33

Rule 33 of the Federal Rules of Criminal Procedure states, in relevant part, that "[u]pon the defendant's motion, the court may vacate any judgment and grant a new trial if the interest of justice so requires." FED. R. CRIM. P. 33(a). Unlike a Rule 29 motion for judgment of acquittal based on the insufficiency of the evidence, "when a district court evaluates a Rule 33 motion it does not view the evidence favorably to the Government, but instead exercises its own judgment in assessing the Government's case." *United States v. Johnson*, 302 F.3d 139, 150 (3d Cir. 2002) (citations omitted). Motions for a new trial pursuant to Rule 33 "are not favored and should be 'granted sparingly and only in exceptional cases.'" *United States v. Silveus*, 542 F.3d 993, 1005 (3d Cir. 2008) (quoting *Gov't of Virgin Islands v. Derricks,* 810 F.2d 50, 55 (3d Cir. 1987)). Accordingly, a court may order a new trial "only if it believes that there is a serious danger that a miscarriage of justice has occurred—that is, that an innocent person has been convicted." *Id.* (quoting *Johnson*, 302 F.3d at 150). Where a motion for new trial is grounded on the cumulative effect of evidentiary errors, a new trial is required "only when 'the[] errors, when combined, so infected the jury's deliberations that they had a substantial influence on the outcome of the

trial.'" *United States v. Thornton*, 1 F.3d 149, 156 (3d Cir. 1993) (quoting *United States v. Hill,* 976

F.2d 132, 145 (3d Cir.1992)).

### III.    EVIDENCE ADDUCED AT TRIAL

The following evidence, pertinent to Defendant Quinones-Davila's Motion, was elicited at

trial. All of the evidence is based on the testimony of the witnesses and/or grounded in exhibits

introduced by the Government.

Confidential informant Timothy Schoenbohm ("Schoenbohm") testified that around

August 2014 he met Defendant Jose Hodge and they began to plan a "job" in which they would

use Schoenbohm's boat—the Scorpion—to meet with another boat south of St. Croix to collect a

load of cocaine.[3] Schoenbohm learned that the job was for Defendant Quinones-Davila.

Schoenbohm and Defendant Quinones-Davila exchanged text messages prior to the job in which

Defendant Quinones-Davila encouraged Schoenbohm. Schoenbohm and Defendant Hodge later

went out to sea and successfully retrieved 35 kilograms of cocaine. Schoenbohm further testified

that after he and Defendant Hodge retrieved the cocaine, Defendant Quinones-Davila traveled to

St. Croix and met with Defendant Hodge and Schoenbohm. At the meeting, Defendant Quinones-

Davila shook Schoenbohm's hand, told him "great job," and said that there was a lot more work

to do.

In October 2014, Schoenbohm and Defendant Hodge began preparations for another job—

this time for the retrieval of 71 kilograms of cocaine. Some of the cocaine was for Defendant

Hodge and some was for Defendant Quinones-Davila. Defendant Hodge and Schoenbohm made

---

[3] According to the evidence, Schoenbohm was initially a member of the drug organization until
November 13, 2014, when he agreed to become a Government confidential source after he was
stopped by police following an unsuccessful attempt to retrieve drugs and found to be in unlawful
possession of a gun.

the first trip out to sea to pick up the drugs, but they were unsuccessful. Later, Defendant Hodge, Defendant Anibal Vega-Arizmendi, and Jean Cruz-Albert made a second trip out to sea, which was also unsuccessful. On the third trip, Schoenbohm, Defendant Anibal Vega-Arizmendi, and Cruz-Albert went out to sea and successfully retrieved the drugs. The cocaine was briefly stored at Schoenbohm's residence, and was later transferred to Defendant Hodge's residence. Co-conspirator Carmelo Cruz-Velez arrived on St. Croix in a private plane. Defendant Hodge, Schoenbohm, and Cruz-Velez transported the cocaine to the airport in suitcases, where it was loaded onto Cruz-Velez's plane and flown to Puerto Rico.

Schoenbohm testified that Defendant Hodge contacted him in November 2014 regarding an attempted retrieval of an 80-kilogram load of cocaine at sea for Defendant Quinones-Davila. The Government introduced text messages from Defendant Hodge to Schoenbohm in which Defendant Hodge asked Schoenbohm to check "lotto numbers" for him—which Schoenbohm testified referred to GPS coordinates identifying a location for the mid-sea transfer of cocaine between vessels. On November 12, 2015, Schoenbohm and Defendant Hodge traveled on Schoenbohm's boat approximately 65 nautical miles south of St. Croix in an attempt to retrieve a load of cocaine, but were unable to locate the supply vessel and returned to St. Croix. Upon their return, Schoenbohm and Defendant Hodge were stopped by law enforcement in Schoenbohm's truck as they were towing the Scorpion near Chenay Bay. Law enforcement performed a consent search of Schoenbohm's truck and the Scorpion, and discovered a backpack in the truck containing a firearm. Following the vehicle stop and the discovery of the firearm, Schoenbohm met with DEA agents on November 13, 2014 and agreed to become a confidential informant for the Government. Schoenbohm informed law enforcement that Defendant Omy Gutierrez-Calderon gave him the firearm discovered in Schoenbohm's vehicle for use in protection during mid-sea retrievals of

cocaine. That same day, Schoenbohm recorded conversations with Defendants Hodge and Quinones-Davila discussing the attempted retrieval of cocaine. Although Defendant Quinones-Davila encouraged Schoenbohm to make another attempt to retrieve the load of cocaine, Schoenbohm and Defendant Hodge decided not to make another attempt following the vehicle stop.

The Government introduced audio recorded conversations that took place between Schoenbohm and Defendant Quinones-Davila in November 2015 in which Defendant Quinones-Davila asked Schoenbohm whether his boat was ready and told him not to go anywhere. Soon thereafter, Defendant Hodge called Schoenbohm and told Schoenbohm to meet him and others at the Pueblo Supermarket parking lot in St. Croix. After Defendant Hodge called Schoenbohm, Defendant Quinones-Davila called Schoenbohm and asked "I surprise you – eh?" When Schoenbohm went to the parking lot, he saw Defendant Hodge, Defendant Anibal Vega-Arizmendi, and Cruz-Albert, and they talked about the upcoming job.

On November 9, 2015, Schoenbohm, Defendant Anibal Vega-Arizmendi, Cruz-Albert, and an individual identified as Juan went out on the first of several attempts to obtain drugs, but because of rough seas they returned without retrieving the drugs. Schoenbohm testified that Defendant Hodge provided suitcases for use in the retrieval of cocaine, and that Defendant Hodge later introduced Schoenbohm to an individual named Danny—a.k.a. Daniel Santiago-Colon—whom Defendant Hodge said was a good captain and could drive Schoenbohm's boat. The next day, Schoenbohm launched his boat and let others take it on another attempt, but the attempt was again unsuccessful. Schoenbohm testified that Santiago-Colon, Juan, and Defendant Anibal Vega-Arizmendi later used a green Spider boat on another unsuccessful attempt.

With regard to the final attempt, the Government introduced text messages from Defendant Quinones-Davila to Schoenbohm on November 11, 2015 regarding the transfer of money through Western Union for fuel for Schoenbohm's boat for use in the attempted retrieval of cocaine, as well as additional evidence that Schoenbohm successfully retrieved money from Western Union using the information that Defendant Quinones-Davila provided him. The Government also introduced text messages from Defendant Quinones-Davila to Schoenbohm on November 12, 2015 in which Defendant Quinones-Davila informed Schoenbohm that he would get a bonus for all of his help. A text message from Defendant Hodge to Schoenbohm on November 12, 2015, instructing him to provide his name to Defendant Gutierrez-Calderon to arrange a transfer of money through Western Union, was also introduced by the Government, as was an audio recording of a conversation between Schoenbohm and Defendant Gutierrez-Calderon in which Defendant Gutierrez-Calderon asked for the spelling of Schoenbohm's name and told him to "go now." Schoenbohm testified that these conversations were in relation to the transfer of money through Western Union for fuel for his boat in a subsequent attempt to retrieve drugs.

On November 13, 2015, Schoenbohm, Defendant Hodge, and Gamalier Rohlsen-Arizmendi brought a gas tank to the beach at Coakley Bay for use in an attempted retrieval of cocaine on Schoenbohm's boat, where they met Defendant Jesus Burgos-Montanez and Santiago-Colon. The gas tank was loaded onto Schoenbohm's boat, and Rohlsen-Arizmendi, Santiago-Colon, and Defendant Burgos-Montanez boarded the boat and headed east. Drug Enforcement Administration ("DEA") Task Force Officer ("TFO") Aldemar Santos testified that at about 2:00 a.m. the next morning, he arrived at Knight's Bay and saw Defendant Hodge being detained by another officer. TFO Santos walked along the beach with his flashlight and observed Rohlsen-Arizmendi, Defendant Burgos-Montanez, and an individual later identified as Alejandro Marva-

Romero conversing with each other. When TFO Santos announced "policia," two of the three men ran. Law enforcement officers were able to detain Rohlsen-Arizmendi and Marva-Romero and discovered four suitcases nearby. Schoenbohm identified the suitcases in photographs as the same suitcases that were involved in the earlier attempts to retrieve cocaine in November 2015. It was later determined that the suitcases collectively contained 87 kilograms of cocaine. Later that same morning, TFO Santos observed Defendant Burgos-Montanez walking along the road and placed him under arrest.

The Government introduced evidence that Defendant Quinones-Davila had a conversation with Schoenbohm after the arrests. During the conversation, Defendant Quinones-Davila inquired about the whereabouts of Santiago-Colon, and told Schoenbohm that Schoenbohm's and Santiago-Colon's names were being called. Schoenbohm understood this to mean that the individuals that had been arrested were accusing him and Santiago-Colon of setting them up.

The Government introduced additional evidence in the form of Defendant Quinones-Davila's post-arrest statement—given to DEA Agent Brian Gaumond and interpreted by TFO Daniel Rivera—that Defendant Quinones-Davila admitted having a source of cocaine in Venezuela and coordinating the mid-sea exchange of cocaine in the Caribbean Sea with that source using GPS coordinates.

## IV. DISCUSSION

### A. Defendant's Rule 29 Arguments

As noted above, Defendant Quinones-Davila challenges the sufficiency of the Government's evidence against him on Counts 1 and 6.

As to the conspiracy charged in Count 1, Defendant Quinones-Davila argues that there was a variance between the Indictment and the Government's evidence at trial because the evidence at

trial established, at most, the existence of multiple conspiracies rather than the single conspiracy charged in the Indictment. (Dkt. No. 1612 at 13). Specifically, Defendant Quinones-Davila contends that the Government failed to present sufficient evidence to satisfy the second of three factors identified by the Third Circuit in *United States v. Kelly*, 892 F.2d 255 (3d Cir. 1989)— whether the agreement contemplated by the conspirators contemplated bringing to pass a continuous result that will not continue without the continuous cooperation of the conspirators. *Id.* at 14.[4] Defendant Quinones-Davila points to testimony by DEA Agent Brian Gaumond and confidential informant Timothy Schoenbohm, along with audio recordings and text messages from the November 2015 event, regarding Defendant Quinones-Davila's unwillingness to work with Defendants Jose Hodge and Omy Gutierrez-Calderon. *Id.* He concludes that this evidence establishes that, "at least by November 2015, Quinones-Davila had no agreement with Hodge and Gutierrez-Calderon to transport drugs to St. Croix." *Id.*

Defendant Quinones-Davila relies on this same evidence to attack the sufficiency of the evidence against him on Count 6. He contends that communications between himself and Schoenbohm establish that, with respect to the November 2015 event, Defendant Quinones-Davila had ceased his attempts to ship cocaine through St. Croix as of November 11, 2015, and that the individuals he sent to St. Croix to assist in the retrieval of cocaine had left St. Croix, such that Defendant Quinones-Davila was not associated with the shipment that arrived on November 14, 2015. *Id.* at 14-15.

The Government responds that the evidence at trial was sufficient to support a finding beyond a reasonable doubt that Defendant Quinones-Davila was guilty on Counts 1 and 6. It points

---

[4] Defendant Quinones-Davila does not challenge the sufficiency of the Government's evidence on the first and third *Kelly* factors—"whether there was a common goal among the conspirators" and "the extent to which the participants overlap in the various dealings." *Kelly*, 892 F.2d at 259.

to evidence that Defendant Quinones-Davila discussed the coordination of attempts to retrieve cocaine with Schoenbohm in November 2015 and arranged for co-conspirators to arrive on St. Croix from Puerto Rico to participate in the attempts. (Dkt. No. 1612 at 4-5). The Government also points to evidence that Defendant Quinones-Davila texted Schoenbohm with information that Schoenbohm used to retrieve a Western Union money transfer for fuel for his boat in the days before the successful retrieval of an 87.3-kilogram load of cocaine by co-conspirators on November 13-14, 2015. *Id.* at 5. The Government further points to Defendant Quinones-Davila's communication with Schoenbohm after the arrests of the co-conspirators as evidence that Quinones-Davila was continuing to receive information regarding the attempted retrievals of cocaine after November 11, 2015. *Id.* In sum, the Government argues that—despite any evidence that Defendant Quinones-Davila was unwilling to work with Defendants Hodge and Gutierrez-Calderon—it presented sufficient evidence from which a rational jury could find beyond a reasonable doubt that Defendant Quinones-Davila was a member of the single conspiracy charged in Count 1, and that Defendant Quinones-Davila aided and abetted the successful retrieval of cocaine on November 13-14, 2015 as charged in Count 6. *Id.* at 5-6.

### B.    Analysis

#### 1.  Count 1

When evaluating whether a series of events constitutes a single conspiracy or separate unrelated events, the Third Circuit looks at the following three factors set forth in *United States v. Kelly*, 892 F.2d 255 (3d Cir. 1989):

> First, we examine whether there was a common goal among the conspirators. Second, we look at the nature of the scheme to determine whether the agreement contemplated bringing to pass a continuous result that will not continue without the continuous cooperation of the conspirators. Third, we examine the extent to which the participants overlap in the various dealings.

*Kelly*, 892 F.2d at 259 (citations omitted). While these three *Kelly* factors are "useful to show the existence of a single conspiracy . . . the absence of one factor does not necessarily defeat an inference of the existence of a single conspiracy." *United States v. Padilla*, 982 F.2d 110, 115 (3d Cir. 1992).

The Court finds in this case that the evidence presented at trial—when viewed in the light most favorable to the prosecution—was sufficient to allow a rational trier of fact to find the existence of the single conspiracy as charged in Count 1 of the Indictment beyond a reasonable doubt.[5] In his Motion, Defendant Quinones-Davila challenges the sufficiency of the evidence as it relates to only the second *Kelly* factor—whether the conspirators' agreement contemplated bringing to pass a continuous result that will not continue without the continuous cooperation of the conspirators. He contends that the Government failed to establish the second *Kelly* factor in light of evidence presented at trial that Defendant Quinones-Davila was unwilling to work with Defendants Hodge and Gutierrez-Calderon as of November 2015.[6]

When interpreting the second *Kelly* factor, the Third Circuit "look[s] to whether there was evidence that the activities of one group were necessary or advantageous to the success of another aspect of the scheme or to the overall success of the venture." *United States v. Rigas*, 605 F.3d

[5] The Court provided the rationale for this finding in its December 21, 2018 Memorandum Opinion denying Defendant Hodge's Post-Trial Motion for Judgment of Acquittal. (Dkt. No. 1750 at 11-20). The Court incorporates that analysis in full here to the extent that Defendant Quinones-Davila's challenge is to the sufficiency of the evidence on all three *Kelly* factors. As noted below, however, the Court reads Defendant Quinones-Davila's argument as challenging the sufficiency of the evidence with regard to only the second *Kelly* factor.

[6] As the Government notes, Defendant Quinones-Davila focuses on the November 2015 event only, and presents no argument with respect to evidence of his involvement along with Defendants Hodge and Gutierrez-Calderon in earlier successful and unsuccessful attempts to retrieve cocaine, as charged in the Indictment.

194, 214–15 (3d Cir. 2010) (quoting *United States v. Greenidge*, 495 F.3d 85, 93 (3d Cir. 2007)).

In *United States v. Fausnaught*, 380 F. App'x 198 (3d Cir. 2010), a Third Circuit panel considered whether the Government's evidence was sufficient to establish the second *Kelly* factor where Fausnaught argued that there was no "continuous cooperation" among the co-conspirators in a drug trafficking conspiracy because he had "dropped out of the conspiracy for a brief period of time . . . ." *Id.* at 202. In rejecting this argument, the Third Circuit panel noted that the evidence at trial revealed that Fausnaught later returned to the conspiracy and that there was "no indication that he attempted to withdraw from the conspiracy. *Id.* It further concluded that "[t]he record at trial included substantial evidence of activities by members of the conspiracy that were necessary to further its overall purpose of making money through the sale of drugs . . . [including] the transportation of drugs; the supply, distribution and sale of the drugs; storage of the drugs at the residences of members of the conspiracy; and travel to Amsterdam to obtain materials for the growing of marijuana." *Id.*

Similarly here, the evidence is sufficient to permit a finding by a rational jury that the Defendants in this case engaged in activities that were necessary or advantageous to the overall success of the conspiracy—the retrieval of cocaine at mid-sea and its distribution for profit. There is evidence that Defendant Quinones-Davila communicated with cocaine suppliers to arrange for the mid-sea retrieval of cocaine using GPS coordinates to identify the location of the exchanges; that there was communication between Schoenbohm and Defendant Quinones-Davila, and between Schoenbohm and Defendant Hodge regarding GPS coordinates to arrange the mid-sea transfer of cocaine from a Venezuelan vessel to boats operated by members of the conspiracy; that Defendants Quinones-Davila, Hodge, and Gutierrez-Calderon arranged to have individuals and/or resources available to accomplish jobs—including, Schoenbohm's boat, a crew, and a plane and

pilot to transport drugs from St. Croix to Puerto Rico; that Defendant Gutierrez-Calderon provided Schoenbohm with a firearm for protection while retrieving drugs; and that Defendant Hodge often played a pivotal role on St. Croix in coordinating the activities of members of the conspiracy in connection with the attempted retrievals, including storing cocaine at his home. There is also evidence that Defendants Hodge, Anibal Vega-Arizmendi, Jean Vega-Arizmendi, and Burgos-Montanez participated in successful or unsuccessful ventures to retrieve cocaine by going out on the boats to retrieve drugs. The fact that not every attempt involved every member of the conspiracy does not negate a finding of a single conspiracy. *See Padilla*, 982 F.2d at 115 ("A single conspiracy finding does not require every member to participate in every transaction.") (quotation omitted).

The evidence presented at trial regarding Defendant Quinones-Davila's unwillingness to work with Defendants Hodge and Gutierrez-Calderon does not alter the Court's conclusion as to the sufficiency of the evidence to support a finding of a single conspiracy. The Third Circuit has made clear that "[d]isputes between participants do not necessarily fracture a single conspiracy." *Kelly*, 892 F.2d at 260 (holding that "infighting among the conspirators" did not fracture a single conspiracy where the "common catalyst of the disputes was greed" and "[n]o player wanted to be left out of the operation," which did not constitute evidence of "separate conspiracies working at cross-purposes to each other") (citing *DeVarona*, 872 F.2d at 120; *United States v. Camiel*, 689 F.2d 31 (3d Cir. 1982)). The evidence at trial indicated that a dispute had arisen between Defendants Quinones-Davila and Hodge by the time of the attempted retrievals of cocaine in November 2015. As a result of this dispute, there was evidence that Defendant Hodge was not to be told about the Quinones-Davila job, or, alternatively, that he was not to be told that the job was for Quinones-Davila. Nonetheless, as demonstrated by the evidence discussed herein, Defendant

Hodge became involved in the November 2015 event and assisted in the same attempted retrievals of cocaine that Defendant Quinones-Davila organized. That members of the conspiracy may have attempted to conceal Defendant Hodge's involvement in the November 2015 attempts from Defendant Quinones-Davila or to conceal from Defendant Hodge that the job was for Defendant Quinones-Davila in light of their dispute does not fracture the existence of a single conspiracy. There is no requirement for "the government to prove 'each defendant knew all the details, goals, or other participants in order to find a single conspiracy.'" *United States v. Ha Ngo*, 451 F. App'x 220, 224 (3d Cir. 2011) (quoting *Kelly*, 892 F.2d at 260). In fact, viewed in the light most favorable to the Government, the evidence that Defendant Hodge participated in the attempted retrievals of cocaine in November 2015 against Defendant Quinones-Davila's wishes would support a finding that Defendant Hodge's role in organizing the attempted retrievals was necessary to the success of the overall scheme despite Defendant Quinones-Davila's desire that Defendant Hodge be excluded from the November 2015 events.

To the extent that Defendant Quinones-Davila's argument with respect to Count 1 is premised on a contention that evidence of his unwillingness to work with Defendant Hodge is sufficient to support a finding that Defendant Quinones-Davila had withdrawn from the charged conspiracy by November 2015, the Court rejects this argument as well. As described in the Third Circuit's Model Jury Instruction, to withdraw from a conspiracy a defendant "must have taken some clear, definite and affirmative action to terminate his participation, to abandon the illegal objective, and to disassociate himself from the agreement. Withdrawal requires proof that [the defendant] *changed his intent about participating in the agreement*." Mod. Crim. Jury Instr. 3d Cir. 6.18.371J (emphasis added). Evidence that demonstrates that a defendant stopped activities

17

in furtherance of the conspiracy, stopped cooperating with the conspiracy, or was inactive for a period of time is not enough to establish withdrawal. *Id.*

To be entitled to a withdrawal instruction, a defendant must make a *prima facie* showing of withdrawal. He can make such a showing through evidence that he "completely sever[ed] his []relationship with the enterprise," or—if he has not completely severed his ties with the enterprise—by "demonstrat[ing] either that he gave notice to his co-conspirators that he *disavows the purpose of the conspiracy* or that he did acts inconsistent with the object of the conspiracy." *United States v. Antar*, 53 F.3d 568, 583 (3d Cir. 1995), *overruled on other grounds by Smith v. Berg*, 247 F.3d 532, 534 (3d Cir. 2001) (emphasis added). A finding of withdrawal must be supported by evidence of an "affirmative act of withdrawal" by the defendant, "typically either a full confession to the authorities or communication to his co-conspirators that he has abandoned the enterprise and its goals." *United States v. Steele*, 685 F.2d 793, 803-04 (3d Cir. 1982).

There is no such evidence of withdrawal in the record here. Defendant Quinones-Davila's unwillingness to work with Defendant Hodge is insufficient to establish that he completely severed his relationship with the conspiracy or to show that he gave notice to his co-conspirators that he was disavowing the conspiracy and its goal of retrieving cocaine at mid-sea to distribute for profit. *See, e.g., United States v. Ponzo*, 853 F.3d 558, 580 (1st Cir. 2017), *cert. denied*, 138 S. Ct. 980 (2018) (defendant failed to establish withdrawal where he pointed to no evidence of an affirmative act of withdrawal but rather "talk[ed] up evidence indicating he had stopped working with certain conspirators"). To the contrary, evidence that Defendant Quinones-Davila communicated with Schoenbohm that he did not want to work with Defendant Hodge in the same conversation in which he was discussing with Schoenbohm an upcoming job—together with Defendant Quinones-Davila's subsequent arrangement for a crew to travel to St. Croix to accomplish the job and his

later conversation with Schoenbohm after the arrests of some of the co-conspirators—is sufficient evidence that Defendant Quinones-Davila remained a member of the conspiracy.

Accordingly, for the reasons discussed above the Court will deny Defendant Quinones-Davila's Motion for Judgment of Acquittal as to Count 1 because, viewed in the light most favorable to the Government, the evidence adduced at trial was sufficient to support the jury's finding that the single conspiracy charged in the Indictment existed and that Defendant Quinones-Davila was a member thereof.

### 2. Count 6

Defendant Quinones-Davila contends that the evidence at trial was insufficient to establish his guilt beyond a reasonable doubt with respect to Count 6 of the Indictment—possession of cocaine with intent to distribute. As discussed above, Defendant Quinones-Davila was charged under an aiding and abetting theory on Count 6, such that the Government's burden at trial was to present evidence to establish beyond a reasonable doubt that (1) someone committed each of the essential elements of Count 6; (2) Defendant Quinones-Davila knew that the charged offense was going to be committed; (3) Defendant Quinones-Davila knowingly did some act for the purpose of aiding, assisting, facilitating or encouraging the commission of the charged offense and with the intent that the charged offense be committed; and (4) Defendant Quinones-Davila's act or acts did, in some way, aid, assist, facilitate or encourage the commission of the crime. Defendant Quinones-Davila contends that communications between himself and Schoenbohm establish that he did not aid or abet the successful retrieval of cocaine by co-conspirators on November 13-14, 2015, but rather that Defendant Quinones-Davila had ceased his attempts to ship cocaine through St. Croix as of November 11, 2015.

The Court rejects Defendant Quinones-Davila's argument. Evidence in the form of text messages between Defendant Quinones-Davila and Schoenbohm and Schoenbohm's testimony demonstrate that Defendant Quinones-Davila provided Schoenbohm with information to retrieve money at Western Union on November 11, 2015. Schoenbohm testified that this money was to buy fuel for his boat, the Scorpion, to be used in the retrieval of cocaine. Defendant Quinones-Davila sent additional messages to Schoenbohm on November 12, 2015 in which he asked Schoenbohm to get ready for a job and told him that he would get a "bonus" for all his help. The following day, on November 13, 2015, co-conspirators used the Scorpion to successfully retrieve an 87.3-kilogram load of cocaine at mid-sea. When viewed in the light most favorable to the prosecution, this evidence—viewed in the context of all of the evidence adduced at trial with respect to Defendant Quinones-Davila's membership and role in the conspiracy—is sufficient to permit a rational jury to conclude beyond a reasonable doubt that Defendant Quinones-Davila knew that the attempted retrieval of cocaine on November 13, 2015 would take place; that Defendant Quinones-Davila knowingly arranged for the transfer of money to Schoenbohm through Western Union to pay for fuel for Schoenbohm's boat, which would be used in the attempt; and that Defendant Quinones-Davila's acts in fact facilitated the successful retrieval of cocaine by co-conspirators on November 13, 2015. Accordingly, the Court will deny Defendant Quinones-Davila's Motion for Judgment of Acquittal on Count 6.

### C.   Defendant's Rule 33 Arguments

Defendant Quinones-Davila argues that the cumulative effect of various alleged defects and errors at the second trial—including alleged "rampant *Brady* violations, the filing of the superseding indictment on the eve of trial, the production of discovery on the eve of trial, the denial of an expert, and the Court's evidentiary rulings"—violated his due process rights, such that his

request for a new trial pursuant to Rule 33 should be granted. (Dkt. No. 1612 at 23). Defendant addresses the alleged defects and errors in three parts: (1) an alleged Sixth Amendment right to counsel violation arising from the cumulative effect of the alleged *Brady* violations, the filing of the Second Superseding Indictment, and the Court's denial of his motion to continue trial; (2) the Court's alleged error in admitting hearsay evidence in the form of Western Union records; and (3) the Court's alleged error and resulting prejudice to Defendant's due process rights in its denial of his request to hire a DEA expert to assist in his preparations for trial.

The Court addresses each of Defendant Quinones-Davila's arguments in turn and concludes that he has failed to make a showing—through his various challenges to the Court's rulings prior to and during the second trial—that the Court's rulings were in error or "that there is a serious danger that a miscarriage of justice has occurred" such as would warrant a new trial under Rule 33. *Silveus*, 542 F.3d at 1005. Individual meritless challenges do not, in combination, produce a due process or other constitutional violation.

### 1. Sixth Amendment Challenges

Defendant Quinones-Davila argues that the Court's denial of his request for a continuance of the second trial following the filing of the Second Superseding Indictment on February 21, 2018—combined with alleged *Brady* violations by the Government during the second trial— violated his Sixth Amendment right to counsel in light of the complex nature of this case. (Dkt. No. 1612 at 15). He asserts that his counsel had insufficient time to effectively prepare for the second trial in light of the filing of the Second Superseding Indictment on "the eve of trial" on February 21, 2018.[7] Defendant Quinones-Davila further argues that the Court erred in failing to

---

[7] The Court notes that, at the time the Second Superseding Indictment was filed, the trial of this matter was scheduled to commence on April 16, 2018, leaving Defendant's counsel with 54 days to prepare for trial after the filing of the Second Superseding Indictment. The Court also notes that

grant a continuance of trial to permit his counsel sufficient time to review untimely discovery

provided by the Government between March 9 and April 16, 2018. *Id.* at 20.[8]

Defendant Quinones-Davila also argues that the Court erred in failing to exclude the

testimony of TFO Daniel Rivera based on the Government's alleged *Brady* violation through its

failure to timely disclose that TFO Rivera was involved in a separate investigation of Defendant

Quinones-Davila. *Id.*[9] He argues that the Court's decision to issue a jury instruction as a means of

addressing the Government's failure to timely disclose this information benefitted the Government

where TFO Rivera was not available for further cross-examination and the jury instruction failed

to reveal the extent of TFO Rivera's bias. *Id.* Defendant Quinones-Davila further asserts that the

Court erred in "allowing" the Government to withhold information about the role that TFO Rivera

played in the second investigation until after it ruled on Defendant's motion to exclude Rivera's

testimony. *Id.* He contends that the cumulative effect of the Court's denial of his pre-trial motion

---

Defendant Quinones-Davila's Motion fails to acknowledge that, while the Court concluded that Defendants would suffer no prejudice in the absence of a continuance, and thus denied Defendant Quinones-Davila's motion to continue trial on the grounds advanced by Defendant, it exercised its discretion to continue the trial for two weeks—to April 30, 2018—to provide Defendants with additional time to prepare for trial. In sum then, Defendant had 68 days—over two months—to prepare for trial after the Second Superseding Indictment was filed.

[8] Defendant Quinones-Davila frames all of the Government's untimely discovery disclosures as *Brady* violations, although he provides no analysis of individual items of discovery, the untimely disclosure of which he contends violated *Brady*. As such, Defendant Quinones-Davila's blanket labeling of each untimely disclosure of evidence by the Government as a *Brady* violation is unsupported by any previous finding of the Court during this case, and Defendant has advanced no argument in the instant Motion to support such a finding by the Court here.

[9] The Court notes that, at trial, it addressed the issue regarding the Government's failure to timely disclose TFO Rivera's involvement in a separate investigation involving Defendant Quinones-Davila under the rubric of the Government's discovery obligations pursuant to Federal Rule of Criminal Procedure 16. Once again, Defendant Quinones-Davila's assertion that the issues surrounding the Government's disclosure of this information constitute a *Brady* violation is unsupported by any finding of the Court at trial, or any argument advanced in his Motion.

to continue trial, the Government's untimely disclosures and alleged *Brady* violations, and the Court's denial of his request to exclude TFO Rivera's testimony at trial so hindered his counsel's ability to represent him at trial that a Sixth Amendment violation of his right to counsel resulted.

### a. Defendant's Motion to Continue Trial

With respect to Defendant Quinones-Davila's argument that the Court erred in denying his motion to continue trial following the filing of the Second Superseding Indictment on February 21, 2018, the Court considered and rejected Defendant Quinones-Davila's argument in its March 28, 2018 Memorandum Opinion and Order denying Defendant's request for a two-month continuance of the then-scheduled April 16, 2018 trial date. (Dkt. No. 1315). In so concluding, the Court also considered discovery disclosures made by the Government through March 15, 2018.[10]

The Court incorporates in full its 13-page March 28, 2018 Memorandum Opinion and Order denying Defendant Quinones-Davila's motion to continue trial in rejecting his argument here that the Court's decision to deny his motion to continue prohibited his counsel from mounting an effective defense at trial. For the same reasons previously articulated in the March 28 Memorandum Opinion, the Court rejects Defendant Quinones-Davila's instant claim that the Court

---

[10] Although Defendant's instant Motion references discovery disclosures made by the Government *after* the Court filed its March 28, 2018 Memorandum Opinion and Order denying his motion to continue trial, those disclosures did not, of course, form the basis for Defendant's motion to continue trial or for the Court's denial of that motion. The Court is therefore somewhat puzzled by Defendant's argument, which appears to suggest that the Court erred in denying his motion to continue trial because it did not take into account untimely discovery disclosures *which had not yet been made* at the time of the Court's ruling. In any event, the Court does not find that Defendant Quinones-Davila's blanket assertion in his instant Motion that his counsel was "not prepared to defend against the newly produced evidence," (Dkt. No. 1612 at 18), is sufficient to establish that he was prejudiced by the untimely disclosures occurring after the Court ruled on his motion to continue such as would warrant a new trial—particularly where Defendant makes this assertion without advancing any specific argument as to how the untimely production of the individual items of discovery disclosed after the Court filed its March 28, 2018 Memorandum Opinion prejudiced his ability to mount an effective defense.

erred in denying his motion to continue trial in light of the filing of the Second Superseding Indictment and the Government's untimely discovery disclosures.

### b. TFO Rivera's Testimony

The Court similarly concludes that Defendant Quinones-Davila has failed to demonstrate that the Court's decision to address issues surrounding the Government's delayed disclosure of TFO Rivera's involvement in a separate investigation involving Defendant Quinones-Davila through a jury instruction at trial rather than the exclusion of TFO Rivera's testimony was in error or resulted in prejudice to Defendant such as would warrant a new trial.

The Court placed the rationale for its decision to deny Defendant Quinones-Davila's motion to strike TFO Rivera's testimony and instead issue a jury instruction on the record at trial, and it incorporates and reiterates the same rationale herein. To summarize, the Court found that although the Government disclosed the fact of TFO Rivera's involvement in another investigation pertaining to Defendant Quinones-Davila prior to trial, that disclosure was untimely, inappropriately piecemeal in its delivery, and improperly required a connection of dots by counsel for Defendant Quinones-Davila, such that a discovery violation resulted. On the other hand, the Court also found—as confirmed at the time by a review of the Court reporter's transcription—that the information was revealed by Government counsel at a side-bar conference during the cross-examination of TFO Rivera by counsel for Defendant Quinones-Davila. Defendant's counsel stated that she did not hear this representation by the Government.[11] Had she heard the representation, Defendant's counsel would have had an opportunity to examine TFO Rivera on this issue at the time of her cross-examination. Nonetheless, once apprised of the information, the

---

[11] This is no different, in the Court's view, from a situation where a document is disclosed during discovery and counsel overlooks it.

Court allowed counsel for Defendant Quinones-Davila three additional days, after the Government produced documents related to Defendant's arrest that TFO Rivera testified were part of another case file, to determine whether she wanted to conduct further cross-examination of TFO Rivera in light of the new information. At the end of that period, counsel for Defendant Quinones-Davila declined to further cross-examine TFO Rivera. Four days after declining the opportunity to further cross-examine TFO Rivera, Defendant made his oral motion to exclude TFO Rivera's testimony. In view of this sequence of events, Defendant Quinones-Davila's assertion in his instant Motion that he was "prevented from cross-examining [TFO] Rivera," (Dkt. No. 1612 at 20), does not accurately reflect the facts.

While Federal Rule of Criminal Procedure 16 permits the imposition of a wide variety of sanctions for a discovery violation, "these sanctions are discretionary; 'Rule[16] does not require a district court to do anything.'" *United States v. Jones*, 503 F. App'x 174, 178 (3d Cir. 2012) (quoting *United States v. Lopez*, 271 F.3d 472, 484 (3d Cir. 2001)). A court must consider any harm caused by the violation and fashion a remedy that is adequate to provide a defendant with a fair trial—i.e., produce a "verdict worthy of confidence." *United States v. Lee*, 573 F.3d 155, 162 (3d Cir. 2009) (quoting *United States v. Mitchell*, 365 F.3d 215, 254 (3d Cir. 2004) (internal quotation omitted)). In fashioning an appropriate remedy, it "should consider the reasons for the party's delay in producing the materials, including whether it acted intentionally or in bad faith, and the degree of prejudice to the opposing party." *Id.* at 161 (citations omitted). The court should attempt to "impose the least severe sanction that will accomplish prompt and full compliance" with the government's Rule 16 obligations. *Jacobs v. Gov't of Virgin Islands*, 53 F. App'x 651, 652 (3d Cir. 2002) (quoting *United States v. Ivy*, 83 F.3d 1266, 1280 (10th Cir. 1996)).

Upon consideration of the applicable law and the circumstances presented, the Court determined that the remedy requested by Defendant Quinones-Davila—striking TFO Rivera's testimony—was unwarranted. However, in view of the Government's untimely production and the possible prejudice to Quinones-Davila resulting from his inability to argue bias on the part of TFO Rivera—and notwithstanding the possible waiver by Defendant Quinones-Davila given his counsel's declination of the opportunity to cross-examine TFO Rivera on the subject at issue—the Court determined that some relief was appropriate. The Court therefore issued an instruction informing the jury that TFO Rivera was a case agent in a separate investigation of Defendant Quinones-Davila at the time of his interview of Defendant Quinones-Davila and at the time that TFO Rivera gave testimony during the trial. The instruction further informed the jury that it could use this evidence as evidence of bias on the part of TFO Rivera in determining the credibility of his testimony, and for no other purpose, thereby preventing the Government from using the information adversely to Quinones-Davila.[12] In view of the foregoing, the Court rejects Defendant Quinones-Davila's contention in his instant Motion that an issuance of the jury instruction failed to adequately address the Government's discovery violation under the circumstances.

Defendant Quinones-Davila's assertion that the Court erred in "allowing" the Government to withhold TFO Rivera's specific role as a case agent in the separate investigation until after it

---

[12] Given the language of the instruction, the Court finds perplexing Defendant Quinones-Davila's assertion that the instruction "benefitted the Government instead of Quinones-Davila in that it revealed the existence of the separate investigation, but not the extent of [TFO] Rivera's bias." (Dkt. No. 1612 at 20). In light of the instruction, Defendant's counsel was free to present argument regarding TFO Rivera's bias as a case agent in a separate investigation during her closing arguments. Moreover, Defendant Quinones-Davila's assertion rings particularly hollow because he cries foul on the one hand, claiming that he was unable to cross-examine TFO Rivera regarding his bias resulting from the other Quinones-Davila investigation in which TFO Rivera was involved, and then complains when the jury is provided with an instruction which allows him to argue to the jury the precise point that he claims he could not pursue in the cross-examination of TFO Rivera.

ruled on Defendant's motion to exclude TFO Rivera's testimony is also misguided. Again, the Court notes that Defendant Quinones-Davila declined an opportunity offered by the Court to further cross-examine TFO Rivera—at which point his counsel could have inquired about TFO Rivera's specific role in the separate investigation. Moreover, whether TFO Rivera was a case agent or not, the issue of bias—which counsel declined to pursue through cross-examination—was implicated because the alleged bias resulted from TFO Rivera's involvement in the other investigation. Thus, the fact that the issue of TFO Rivera's status as a case agent was revealed by the Government later does not have the import that Defendant Quinones-Davila ascribes to it. Finally, the jury instruction given by the Court and which Defendant—but not the Government— was permitted to rely upon in argument incorporated both the claim of bias and TFO Rivera's status as a case agent. Under these circumstances, Defendant can hardly be heard to suggest that the Court fostered withholding by the Government or that he suffered any prejudice from the delayed disclosure.

Accordingly, the Court rejects Defendant Quinones-Davila's argument that it erred in denying his motion to exclude TFO Rivera's testimony and instead issuing a jury instruction to address the Government's untimely disclosure of TFO Rivera's involvement in a separate investigation involving Defendant Quinones-Davila. The Court also concludes that Defendant has failed to demonstrate that the Court's decision resulted in any prejudice to him.

## 2. Western Union Records

Defendant argues that he should be granted a new trial based on the Court's alleged error in admitting hearsay evidence in the form of Western Union records bearing his name. (Dkt. No. 1612 at 20-21). He contends that the Court's decision to admit the records for a limited purpose at

trial was not supported by Third Circuit authority. *Id.* He also argues that he was prejudiced by the Government's use of the Western Union records for their impermissible purpose at trial. *Id.*

The Court considered the parties' arguments and relevant case law presented at trial in determining that, while Western Union records bearing Defendant Quinones-Davila's name were inadmissible for the purpose of establishing the truth of the matter asserted (*i.e.*, that Defendant Quinones-Davila in fact sent the wire transfers in question), they were admissible for the limited purpose of showing that a transaction occurred in which Defendant Quinones-Davila's name, among other information, was recorded.[13] Defendant puts forth no new argument or authority in

---

[13] Defendant Quinones-Davila inaccurately represents that the Court admitted the Western Union records for the limited purpose of showing that "a person claiming to [be] an individual associated with the case engaged in a [W]estern [U]nion transaction." (Dkt. No. 1612 at 21). In fact, the Court expressly declined to adopt the approach taken in *United States v. Londono*, 175 F. App'x 370 (2d Cir. 2006), in which the district court admitted Western Union records bearing a sender's name for the "the limited [non-hearsay] purpose of demonstrating that a transaction occurred *and* that someone claiming to be [the defendant] was involved in it." *Id.* (emphasis added). The Court refused to admit the Western Union records in this case for the purpose of establishing that someone claiming to be Defendant Quinones-Davila was involved in the Western Union transactions. Instead, the Court instructed the jury that the limited purpose for which it could use the Western Union records was to establish that a Western Union transaction occurred in which Defendant Quinones-Davila's name was recorded, without using the records to establish that Defendant Quinones-Davila in fact sent the wire transfers in question.

The Court finds support for this approach in the Tenth Circuit's opinion in *United States v. Cestnik*, 36 F.3d 904 (10th Cir. 1994). In that case, the district court admitted Western Union records that contained the names of purported senders of wire transfers. The Tenth Circuit concluded that the district court properly admitted the Western Union records as non-hearsay because they were not introduced to prove the truth of the matter asserted (i.e., that the individuals named a senders in the records in fact sent the wire transfers). *Id.* at 909. Rather, the government introduced the records to link information contained therein about "the amount and origin of the transfer and the identity of the recipients" to other evidence in the case. *Id.* The Tenth Circuit further noted that—had the defendant objected to the portions of the records containing senders' names—he could have requested a limiting instruction or a redaction of those names. *Id.* The Court took a similar approach in this case, admitting the Western Union records for the limited non-hearsay purpose of establishing that a Western Union transaction occurred in which Defendant Quinones-Davila's name, among other information, was recorded—information which the Government was permitted to link to other evidence in the case in the form of text messages received by Schoenbohm. However, the Court instructed the jury that it could *not* use the records for their impermissible

his instant Motion such as would cause the Court to conclude that it erred in admitting the Western Union records for this limited purpose at trial.

As to Defendant Quinones-Davila's claim that the Government relied on the records for their impermissible purpose at trial, the Court notes that it sustained objections and/or issued curative instructions to the jury on those occasions where a Defendant objected to the Government's use of the Western Union records and the Court determined that the Government was in fact suggesting to the jury that the records could be considered for an impermissible purpose. The Court therefore concludes that it appropriately addressed any suggestion by the Government at trial that the Western Union records could be used for an improper purpose. *See e.g.*, *United States v. Wilson*, 257 F. App'x 547, 551 (3d Cir. 2007) ("We repeatedly have found that the proper remedy for improper testimony is a curative instruction rather than a mistrial.") (citations omitted). Accordingly, the Court concludes that Defendant Quinones-Davila has failed to demonstrate a trial error in this regard.

### 3. Denial of Request for DEA Expert

As an additional basis for his request for a new trial, Defendant Quinones-Davila argues that his due process rights were violated by the Court's decision to deny his request to hire a DEA expert to assist in his preparations for the second trial. (Dkt. No. 1612 at 21-22). He contends that the Court abused its discretion in denying his request, and that he was prejudiced as a result because a DEA expert would have assisted with discovery, the identification of breaches of DEA policies, and the preparation of cross-examination questions and the identification of relevant evidence.[14]

---

hearsay purpose—that is, to establish that Defendant Quinones-Davila in fact sent the wire transfers in question.

[14] In this latter regard, Defendant Quinones-Davila claims that a DEA expert would have recognized the significance of case and exhibit numbers contained in DEA 6s that escaped his

Defendant Quinones-Davila asserts that the Court's decision to deny his request to hire a DEA expert rendered his defense ineffective. *Id.* at 23.

The Court provided the rationale for its denial of Defendant's request to hire a DEA expert in a Memorandum Opinion and Order dated February 2, 2018. (Dkt. No. 1190).[15] Aside from his speculative claim that an expert would have more quickly discovered TFO Rivera's involvement in a separate investigation involving Defendant Quinones-Davila, Defendant's instant Motion contains no new argument or authority such as might cause the Court to conclude that it erred in denying Defendant's request to hire a DEA expert. As before, Defendant Quinones-Davila does nothing more than recite a litany of routine responsibilities of trial counsel without establishing why expert services were necessary to provide adequate representation to Defendant.

Accordingly, absent any basis for a finding by the Court that it erred in denying Defendant Quinones-Davila's request to hire a DEA expert, the Court incorporates in full its seven-page February 2, 2018 Memorandum Opinion and Order in rejecting Defendant's argument that the Court erred in denying his request to hire an expert.

## V. CONCLUSION

For the reasons discussed above, the Court will deny Defendant's Motion for Judgment of Acquittal or, in the Alternative, Motion for New Trial. With respect to Defendant's Rule 29 arguments, the Court concludes that the evidence presented at trial was sufficient to permit a

---

counsel, such that information—including TFO Rivera's involvement in a separate investigation involving Defendant Quinones-Davila—would have been discovered by Defendant sooner. (Dkt. No. 1612 at 23). In addition to the speculative nature of the claim, the Court, as described above, appropriately resolved the issue of the untimely disclosure of information related to TFO Rivera's involvement in the separate investigation at trial through the issuance of a jury instruction.

[15] Because Defendant's request was filed *ex parte*, the Court's Memorandum Opinion and Order was filed under seal.

rational jury to find Defendant Quinones-Davila guilty beyond a reasonable doubt on Counts 1 and 6.[16] As to Defendant's Rule 33 arguments, the Court finds that Defendant Quinones-Davila has failed to demonstrate that the Court's rulings at trial were in error or "that there is a serious danger that a miscarriage of justice has occurred" such as would warrant a new trial under Rule 33. *Silveus*, 542 F.3d at 1005. Accordingly, Defendant's Motion will be denied.

An appropriate Order accompanies this Memorandum Opinion.

Date:   January 29, 2019

_____/s/_____
WILMA A. LEWIS
Chief Judge

---

[16] To the extent Defendant Quinones-Davila's Motion may be interpreted as challenging the sufficiency of the evidence against him on all counts of conviction through his reference to the incorporation of unidentified arguments advanced by other Defendants, the Court incorporates its rulings in response to all Defendants' Rule 29 motions during and after trial in denying Defendant Quinones-Davila's instant Motion.